[Cite as *Fiamengo v. Fiamengo*, 2016-Ohio-4720.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| K. LYNAE FIAMENGO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26704 |
| | : | |
| v. | : | T.C. NO. 11-DR-505 |
| | : | |
| PAUL H. FIAMENGO | : | (Civil appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____30th_____ day of _____June_____, 2016.

. . . . . . . . . .

ROBERT M. MUES, Atty. Reg. No. 0017449, 1105 Wilmington Avenue, Dayton, Ohio 45420

and

CHARLES W. MORRISON, Atty. Reg. No. 0084368, P. O. Box 41450, Dayton, Ohio 45441
     Attorneys for Plaintiff-Appellee

BRIAN A. SOMMERS, Atty. Reg. No. 0072821, 130 W. Second Street, Suite 840, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Defendant-appellant Paul H. Fiamengo appeals from a Final Judgment and

Decree of Divorce issued by the Montgomery County Court of Common Pleas, Domestic Relations Division. On appeal, Paul challenges the trial court's allocation of certain rental properties and the income derived therefrom between him and his former spouse, plaintiff-appellee K. Lynae Fiamengo. Paul also challenges the trial court's decision ordering him to pay Lynae $1,050.00 per month in spousal support. Paul filed a timely notice of appeal with this Court on June 1, 2015.

{¶ 2} Paul and Lynae were married on March 26, 1988, in Irvine, California. Prior to, during, and after the termination date of the parties' marriage, Paul bought and rented houses as a real estate investor. Paul formed Dover Properties, Inc., a real estate company, to manage the rental houses he purchased and sold. At the time of the divorce hearings, Paul also owned and operated the Dayton Window and Door Company.

{¶ 3} On April 28, 2011, Lynae filed a complaint for divorce. Paul subsequently filed an answer and counterclaim on May 26, 2011. The trial court held a hearing in order to resolve the parties' contested divorce over the following dates: August 20, 2013, August 22, 2013, September 16, 2013, and August 21, 2014. On February 20, 2015, the trial court issued a written decision in which it stated the basis for its distribution of the parties' marital assets and the spousal support award to Lynae. The trial court awarded Lynae nine rental properties from those owned and operated by Dover Properties and/or Paul. The trial court also awarded Lynae $1,050.00 per month in spousal support. For the purposes of calculating Lynae's spousal support award, the trial court found that her gross annual income totaled $18,309.00. The trial court found that Paul's gross annual income was $75,000.00. We note that the trial court found that the de facto date for the termination of the parties' marriage was June 19, 2010. Although not pertinent to the

instant appeal, Paul was awarded legal custody of the parties' two children with Lynae receiving visitation. The trial court determined that Lynae did not have to pay any child support. The trial court issued a Final Judgment and Decree of Divorce on May 13, 2015, in which it incorporated all of its findings from the decision issued on February 20, 2015.

{¶ 4} It is from this judgment that Paul now appeals.

{¶ 5} Because they are interrelated, we will discuss Paul's first and fifth assignments of error together as follows:

{¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING INCOME APPELLEE DERIVES FROM THE DISTRIBUTION OF RENTAL PROPERTIES AND FAILING TO EXCLUDE THE SAME INCOME FROM APPELLANT IN DETERMINING THE PARTIES' INCOME."

{¶ 7} "THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING SPOUSAL SUPPORT TO APPELLEE WITHOUT SUBSTANTIVE REASONING."

{¶ 8} In his first assignment, Paul contends that the trial court erred in calculating the parties' respective gross annual incomes. Specifically, Paul argues that in determining Lynae's gross annual income, the trial court failed to include the income that she would derive from the nine rental properties that she was awarded in the divorce decree. Additionally, Paul argues that the trial court failed to account for the income he stands to lose as a result of its decision taking away the rental properties and awarding them to Lynae.

{¶ 9} Lynae testified that she is a certified teacher, but as a result of not working for many years, she has had difficulty in obtaining a teaching position. After the parties separated, Lynae testified that she became employed as a teacher's aide in August of

2010, earning $11.28 per hour while working a thirty-seven hour week during the school year. Lynae testified that her salary had increased since August of 2010, and by the final day of the divorce trial on August 21, 2014, she was earning $18,309.00 per year.

**{¶ 10}** As previously mentioned, Paul is self-employed as a real estate investor who buys, sells, rents, and rehabilitates homes through his business, Dover Properties. Paul also owns and operates the Dayton Window and Door Company (DWDC). Paul testified that his gross taxable income from all of his business activities is $26,276.03. The trial court disagreed, and upon review, we find that the calculations made by the trial court in this regard are supported by the record.

**{¶ 11}** Specifically, evidence was adduced which established that the average monthly rental income Paul realized totaled $12,710.00 or $152,520.00 annually before deductions for expenses. Conversely, the record establishes that Dover Properties averaged a net loss of -$352.00 for the years 2010, 2011, and 2012. With respect to the DWDC, Paul provided tax returns for the years 2010, 2011, and 2012. In 2010, DWDC's gross annual income was $322,599.00; in 2011, DWDC grossed $265,683.00; and in 2012, DWDC grossed $264,324.00. For purposes of calculating Paul's gross annual income, the trial court utilized $264,000.00 as the average gross income for DWDC for those years. Based on the documentary evidence, the trial court found that before depreciation and expenses are factored into the equation, Paul realizes approximately $416,520.00 in gross income annually.[1]

**{¶ 12}** In addition to Paul's tax returns and other financial information, the trial court

---

[1] The trial court reached $416,520.00 by adding Paul's gross annual rental income of $152,520.00 to the gross income for DWDC of $264,000.00.

relied on the testimony of Lynae's expert, John Bosse, a certified public accountant, in order to determine Paul's taxable annual income. After reviewing all of Paul's credit statements, rental income, and overall lifestyle (receipts for vacations, dining out, etc.), Bosse testified that he calculated Paul's available income to be between $75,000.00 and $100,000.00 after he paid all of the expenses and costs associated with his rental properties, Dover Properties, and DWDC. Bosse further testified that he calculated that Paul had at least $75,000.00 a year available as his "present cash flow."

{¶ 13} The trial court found that Lynae's gross annual income was $18,309.00. The trial court also found "it equitable to use this *** income figure for the computation of any *** spousal support award." With respect to Paul, the trial court found that his testimony that his reported taxable income is $26,000.00 was not credible nor was it "reflective of his actual free cash flow." The trial court stated that Paul's "lifestyle and business acumen" as testified to by Bosse supports the conclusion that his actual income lies somewhere between $75,000.00 and $100,000.00. The trial court found that the totality of the circumstances established that Paul's annual income was $75,000.00, and it utilized that amount when calculating his spousal support obligation.

{¶ 14} Regarding spousal support, we note that "[d]omestic relations courts are granted broad discretion concerning awards of spousal support, and their orders will not be disturbed on appeal absent an abuse of discretion." *Perry v. Perry,* 2d Dist. Clark No. 07–CA–11, 2008–Ohio–1315, ¶ 5. As the Supreme Court of Ohio determined:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are

simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.

*AAAA Enterprises, Inc. v. River Place Community Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 15} In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider fourteen factors set forth in R.C. 3105.18(C)(1)(a)-(n), which governs awards of spousal support. "In allocating property between the parties to a divorce and in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law." *Rief v. Rief,* 2d Dist. Miami No. 06–CA–47, 2008–Ohio–266, ¶ 6, citing *Kaechele v. Kaechele,* 35 Ohio St.3d 93, 97, 518 N.E.2d 1197 (1988).

{¶ 16} R.C. 3105.18(C)(1) sets forth the following factors for the trial court to consider:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under

section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 17} As part of the divorce decree, Lynae was awarded nine rental properties free and clear of any claims of Paul. The trial court found that as a result of taking ownership of the nine rental properties, Lynae stands to receive a total of approximately $62,784.00 annually ($5,232.00 per month) from the rental fees associated with those properties. However, the trial court did not include that sum when it found that Lynae's gross annual income was $18,309.00 for the purpose of calculating spousal support. Paul argues that this was error on the part of the trial court. Paul also argues that the trial court erred when it failed to deduct $62,784.00 from his annual income as a result of its decision taking away the rental properties and awarding them to Lynae.

{¶ 18} Initially, we note that the trial court did not err when it imputed annual income in the amount of 75,000.00 for the purpose of calculating spousal support. The record establishes that after the de facto termination date of the parties' marriage (June 19, 2010), Paul acquired twelve additional rental properties. Since the acquisition occurred after the de facto termination date of the marriage, the trial court awarded all twelve properties to Paul free and clear of any claim from Lynae as part of the divorce decree. The trial court reasonably found that the twelve properties Paul purchased would cover any loss he suffered in rental income as a result of the award of nine of the original rental properties to Lynae. Accordingly, the trial court did not err when it failed to deduct the rental income from the nine original properties awarded to Lynae from the annual income of $75,000.00 imputed to Paul.

{¶ 19} Upon review, we further conclude that the trial court did not abuse its

discretion by failing to include the additional $62,784.00 that Lynae would derive from the nine rental properties in her gross annual income of $18,309.00 when calculating her spousal support award. Pursuant to R.C. 3105.18(C)(1), the trial court considered the following factors when calculating Lynae's spousal support award: 1) the length of the parties' marriage was twenty-two years; 2) the present age and health of the parties; 3) evidence regarding the employment prospects of the parties; 4) the lack of substantial retirement benefits available to the parties; 5) Paul was the primary breadwinner in the family throughout the marriage; 6) Paul had a gross yearly income from his rentals totaling $148,284.00; 7) Paul owns and operates DWDC, which has had gross annual income in excess of $265,000; 8) the parties "lived an above average lifestyle" during their marriage; and 9) the parties traveled with their children and were able to amass a respectable real estate portfolio.

{¶ 20} Pursuant to R.C. 3105.18(C)(1)(a), among the *circumstances* the court is required to consider when it awards spousal support in the decree is "[t]he income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code." R.C. 3105.171 governs division of marital and separate property. Paul contends that in its spousal support award, the trial court failed to consider the annual income that Lynae is expected to realize from the nine rental properties distributed to her pursuant to R.C. 3105.171. Paul's claim, however, is undermined by the record.

{¶ 21} In its February 20, 2015, decision, the trial court stated the following regarding the effects of its award of the nine rental properties to Lynae's income:

With the real property division as outline[d] above, K. Lynae will be

able to increase her income through her rental properties. Paul's acquisition of at least 12 additional properties after the de facto termination of the marriage will soon, if it hasn't already, add to his rental income.

In view of the totality of the circumstances, this Court finds an award of spousal support to be appropriate and reasonable in this case. Effective March 1, 2015, and subject to the continuing jurisdiction of this Court, [Paul] shall pay to [Lynae] as and for spousal support, the sum of $1,050 per month. *In view of K. Lynae's rental income in the near future, this spousal support award is lower than the $2,000 per month this Court would award based upon the parties*['] circumstances and present incomes.

{¶ 22} Upon review, we conclude that the trial court did not abuse its discretion when it ordered Paul to pay spousal support in the amount of $1,050.00 per month to Lynae. Contrary to Paul's claims, the record clearly establishes that the trial court considered every applicable statutory factor listed in R.C. 3105.18(C)(1)(a), including, but not limited to, the income of both parties, especially the income Lynae is expected to realize from the nine rental properties distributed to her pursuant to R.C. 3105.171. Finally, we note that the trial court specifically retained jurisdiction over the issue of Paul's spousal support obligation and could potentially modify the award upon a change in the circumstances of one or both parties.

{¶ 23} Therefore, we find the trial court addressed each of the R.C. 3105.18(C)(1) factors that apply in the present case and the evidence relevant to those factors. We are able to glean from the court's journal entry the weight it gave to each, and on that basis we conclude that no abuse of discretion is demonstrated in the spousal support award

that was ordered.

{¶ 24} Paul's first and fifth assignments of error are overruled.

{¶ 25} Paul's second assignment of error is as follows:

{¶ 26} "THE TRIAL COURT ABUSED ITS DISCRETION BY ASSIGNING A MARITAL PORTION OF APPELLANT'S SEPARATE PROPERTY AND BY MAKING AN IN-KIND DISTRIBUTION OF APPELLANT'S SEPARATE PROPERTY TO APPELLEE WITHOUT MAKING FINDINGS."

{¶ 27} In his second assignment, Paul argues that the trial court abused its discretion when it awarded Lynae a portion of the equity in the following properties that were acquired during the parties' marriage: 1) 2604 Wayne Avenue; 2) 1140 Share Drive; 3) 1222 Holly Avenue; 4) 3111 East Fifth Street; and 5) 616 St. Nicholas Avenue. Paul also asserts that the trial court erred in making a distributive award to Lynae without making the requisite findings pursuant to R.C. 3105.171(D).

{¶ 28} A spouse's separate property is usually distributed to that spouse. R.C. 3105.171(D). "Separate property" includes all real and personal property and any interest in real or personal property that one spouse acquired before the marriage. R.C. 3105.171(A)(6)(a)(ii). This includes "passive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(iii). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "Traceable" here "refers to evidence demonstrating a connection between property currently owned and some antecedent article of separate property. Such proof overcomes the effect of

commingling, by which separate property may be 'transmuted' into marital property." *Maloney v. Maloney,* 160 Ohio App.3d 209, 2005–Ohio–1368, 826 N.E.2d 864, ¶ 22 (2d Dist.). So in determining whether property is separate or marital, "[t]he key issue is traceability." *Janis v. Janis,* 2d Dist. Montgomery No. 23898, 2011–Ohio–3731, ¶ 48.

{¶ 29} The burden of proving that property is separate is on the proponent of the claim to prove by a preponderance of the evidence. *Cooper v. Cooper,* 2d Dist. Greene Nos. 2007 CA 76, 2007 CA 77, 2008–Ohio–4731, ¶ 14. "Because traceability presents a question of fact, we must give deference to the trial court's findings, and the court's decision on the matter will not be reversed as against the manifest weight of the evidence when it is supported by competent credible evidence." *Maloney* at ¶ 23.

{¶ 30} Generally, the party claiming that an asset is separate property has the burden of proving the claim by a preponderance of the evidence. *Peck v. Peck,* 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist. 1994). Because of the presumption that property acquired during marriage is marital property, R.C. 3105.171(3)(a)(i), this presumption can be overcome only with clear and convincing evidence. *Barkley v. Barkley,* 119 Ohio App.3d 155, 168, 694 N.E.2d 989 (4th Dist. 1997). Clear and convincing evidence means that degree of proof which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Id*; *Hall v. Hall,* 2d Dist. Greene No. 2013 CA 15, 2013–Ohio–3758, ¶ 14.

{¶ 31} R.C. 3105.171 governs the division of marital property and separate property and provides:

***

(A)(3)(a) "Marital property" means, subject to division (A)(3)(b) of this

section, all of the following:

(i) All real and personal property that currently is owned by either or both of the spouses, including but not limited to, the retirement benefits of the spouses, that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both spouses that occurred during the marriage;

***

(b) "Marital property" does not include any separate property.

(4) "Passive income" means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse.

***

(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that

was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

***

(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.

**{¶ 32} 2604 Wayne Avenue, 1140 Share Drive, and 1222 Holly Avenue**

{¶ 33} With respect to the identification and distribution of these three properties, the trial court stated the following:

The home located at 2604 Wayne Avenue was purchased for $28,000 cash on September 16, 1994. *** The home located at 1140 Share Drive was purchased for $40,000 cash on September 30, 1994. *** The home located at 1222 Holly Avenue was purchased for $34,000 cash on October 28, 1994. *** The total cash paid for these 3 properties in 1994 is $102,000. All properties were purchased during the parties' marriage.

Paul states these three homes were a like-kind exchange for property he owned in Torrington, Connecticut located at 31-33 Hillside prior to the parties' marriage. They exchanged rental property for rental property. The tax manager, Jayde Smith, stated that she prepared the tax return that evidenced said like-kind exchange. *** There was no evidence presented that reflected the actual payment amount or value of the 31-33 Hillside property at the time of its sale. The Court finds that Paul did own

said Connecticut property prior to his marriage to K. Lynae.

A review of said joint tax return reveals the Connecticut property was transferred on September 12, 1994. The adjusted basis for the Connecticut property given up was $48,743, while the property received in exchange totaled $102,000; *therefore the separate property interest Paul has in these three properties totals approximately $48,743. There was no other credible tracing of any additional separate funds into these properties. It is Paul's burden to trace any alleged separate property interest.*

The Court finds that Paul has a separate interest in these three properties that totals $48,743 and that all other monies are marital. The parties agree the fair market values (FMV) of said properties are: $30,000 for 2604 Wayne Avenue; $58,000 for 1140 Share Drive; and $32,000 for 1222 Holly Avenue. *** The total agreed upon values [sic] for these 3 properties is $120,000. There is no debt on these properties. Allowing Paul his separate interest of $48,743, leaves the marital portion to be divided of approximately $71,257. The Court will divide the marital portion of these properties equally between the parties.

{¶ 34} As an initial matter, we find it helpful to provide the definition of a like-kind exchange pursuant to 26 U.S.C. § 1031. Section 1031 permits a property owner to exchange relinquished property for replacement property of like-kind, while deferring payment of capital gains taxes on the transaction.

{¶ 35} Paul argues that he sold the Connecticut property for $48,743 in a like-kind exchange for 2604 Wayne Avenue, 1140 Share Drive, and 1222 Holly Avenue. The

Connecticut property was purchased by Paul prior to the parties' marriage. However, the undisputed purchase price of all three properties was $102,000.00. The trial court did not reject Paul's claim that he had used the money from the sale of the Connecticut property to purchase the three new rental properties. Rather, the trial court found that Paul failed to establish that the difference between the sale of his separate Connecticut property and the purchase price of the three rental properties was traceable to any other separate property he owned prior to the marriage. On that basis, the court concluded that Paul failed to bear the burden imposed on him to show, by a preponderance of the evidence, that the rental properties located at 2604 Wayne Avenue, 1140 Share Drive, and 1222 Holly Avenue were fully "traceable" to his own separate property. R.C 3105.171(A)(6)(b).

{¶ 36} Property currently owned is traceable to separate property if a sufficient connection is shown to exist between the two. *Fisher v. Fisher*, 2d Dist. Montgomery No. 20398, 2004-Ohio-7255, ¶ 17. The proponent of a separate property claim has the burden to prove the connection concerned. *Id*. The trial court's review of the evidence was thorough, and on the facts before us, we find that Paul failed to meet his burden to establish that all of the funds used to purchase 2604 Wayne Avenue, 1140 Share Drive, and 1222 Holly Avenue could be traced to the profit he realized from the sale of separate Connecticut property. Thus, the trial court did not abuse its discretion when it found that the three rental properties at issue were not Paul's separate property.

**{¶ 37} 3111 East 5th Street and 616 St. Nicholas Avenue**

{¶ 38} In regards to 3111 East 5th Street and 616 St. Nicholas Avenue, Paul claimed that the entire source of funds used to purchase these properties came from the

sale of another pre-marital rental home he owned in Thomaston, Connecticut located at 31-33 Broadview Heights. Specifically, Paul claims that he purchased 3111 East 5th Street and 616 St. Nicholas Avenue as like-kind exchanges with the property located at 31-33 Broadview Heights, and they are, therefore, his separate property. Evidence adduced at trial established that the 31-33 Broadview Heights property was exchanged and/or sold by Paul for $3,383.00 on February 28, 2001.

{¶ 39} The evidence establishes that the 3111 East 5th Street property was purchased for $19,500.00 cash on December 20, 2000, over two months before the Broadview Heights property was sold. Moreover, there was no indication on the like-kind tax document for the property at 31-33 Broadview Heights that 3111 East 5th Street was being acquired in a deferred exchange. The trial court found, and we agree, that it is therefore "unlikely" that 31-33 Broadview Heights was used in a like-kind exchange with 3111 East 5th Street.

{¶ 40} Additionally, the rental property located at 616 St. Nicholas Avenue was purchased for $35,000.00 cash on March 2, 2001. Even if we accept Paul's claim that the 31-33 Broadview Heights property was exchanged for 3111 East 5th Street and 616 St. Nicholas Avenue, the purchase price for these two properties totaled $54,500.00, while the evidence established that the price of the Connecticut property was only $3,383.00. Upon review, we find that other than the sale price of the Connecticut property, Paul failed to trace any additional separate funds into the purchase of 3111 East 5th Street and 616 St. Nicholas Avenue. Accordingly, we find that the trial court did not abuse its discretion when it found that 3111 East 5th Street and 616 St. Nicholas Avenue were marital property while awarding Paul the sum of $3,383.00 that he was sufficiently

able to trace.

**{¶ 41} Distributive Award of 1140 Share Drive and 3111 East Fifth Street to Lynae**

**{¶ 42}** Finally, Paul contends that the trial court erred when it made a distributive award to Lynae of the rental properties located at 1140 Share Drive and 3111 East Fifth Street without making findings pursuant to R.C. 3105.171(D).

**{¶ 43}** "A 'distributive award' is defined as 'any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code.' " R.C. 3105.171(A)(1). "It is an award from separate property made in order to achieve equity, (1) to compensate a party for the financial misconduct of the other party; (2) to provide relief where it is impractical or burdensome to reach an equitable division comprised of marital property alone; or (3) to effectuate, facilitate, or supplement the disbursement of marital property." *Klein v. Cruden,* 2d Dist. Montgomery No 19952, 2004-Ohio-1479, ¶ 15, quoting Sowald, Morganstern, Domestic Relations Law (4th Ed.2002) 578-579, Section 12:5. A trial court's decision regarding the issue of distributive awards will not be overturned absent an abuse of discretion. *Pressler v. Pressler,* 12th Dist. Butler No. CA 2004-03-068, 2005-Ohio-1408, ¶ 23.

**{¶ 44}** As previously stated, we agree with the trial court and find that because Paul is unable to trace any additional separate funds into the purchase of either 3111 East 5th Street or 1140 Share Drive, both of the rental properties were marital in nature and therefore not subject to R.C. 3105.171(D). Although Paul was able to trace a small

portion of the equity in these two properties to his separate property, the remaining equity was marital, subject to an equitable division between the parties. The trial court awarded Paul his separate interest in the properties which could be traced back to the payments he received when he sold the two separate properties in Connecticut. Simply put, Lynae received the titles to the two marital properties after Paul's proven separate interest had been deducted. Since Lynae was awarded the titles to 3111 East 5th Street and 1140 Share Drive during an equitable division of *marital property,* not separate property, R.C. 3105.171(A)(1) does not apply, and the trial court was not required to make any findings pursuant to that statute.

{¶ 45} Paul's second assignment of error is overruled.

{¶ 46} Paul's third assignment of error is as follows:

{¶ 47} "THE TRIAL COURT FAILED TO FOLLOW PRECEDENT AND ABUSED ITS DISCRETION IN FAILING TO AWARD APPELLANT SEPARATE PROPERTY OBTAINED THROUGH A § 1031 LIKE-KIND EXCHANGE."

{¶ 48} In his third assignment, Paul contends that the trial court abused its discretion when it found that the rental property located at 1832 Pinecrest Drive was marital property and awarded Lynae her equity interest in the property of $32,500.00. Specifically, Paul argues that the evidence adduced at trial establishes that 1832 Pinecrest Drive was originally acquired as part of a § 1031 like-kind exchange involving his pre-marital residence located at 39-41 Broadview Heights in Connecticut. Neither party disputes that 39-41 Broadview Heights was Paul's separate pre-marital property. In support of his argument, Paul introduced a joint tax document which purported to establish that he exchanged 39-41 Broadview Heights for 1832 Pinecrest Drive in a §

1031 like-kind exchange. Defense Exhibit "XX."

{¶ 49} Contrary to Paul's argument, Defense Exhibit XX merely establishes that a like-kind exchange of a "duplex residential" was executed with 39-41 Broadview Heights. There is no address stated for the property received in the like-kind exchange, and it refers to a fair market value for the unidentified property of $76,611.00. Defense Exhibit XX also lists the date that the unidentified property was received as July 5, 2001.

{¶ 50} We also note that the parties' 2001 joint tax return refers to an "1831" Pinecrest Drive property as a "single family residential" that was depreciated in the same return.[2] The trial court found that Paul failed to adduce any credible evidence which accounted for the lack of an address on the like-kind exchange form, as well as the discrepancy involving the property's description, i.e. "duplex residential" versus "single family residential." Upon review, we therefore conclude that the trial court did not abuse its discretion when it found that the rental property located at 1832 Pinecrest Drive was marital property. We find that that the record establishes that Paul failed to meet his burden to prove that 1832 Pinecrest Drive, which was acquired during the parties' marriage, was purchased solely with his pre-marital separate property. On this record, there is competent, credible evidence to support the trial court's decision, accordingly, we will not disturb it.

{¶ 51} Paul's third assignment of error is overruled.

{¶ 52} Paul's fourth assignment of error is as follows:

---

[2] Both the parties and the trial court treat the reference to "1831" rather than "1832" Pinecrest Drive in the joint tax return as a typo. Any further references to the Pinecrest Drive address in the record list "1832" as the house number. We will therefore treat the reference to "1831" Pinecrest Avenue in Defense Exhibit XX as a typo.

{¶ 53} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO IDENTIFY 228 HEATON AVENUE, 625 BOWEN STREET, AND 915 MILBURN AVENUE AS APPELLANT'S SEPARATE PROPERTY."

{¶ 54} In his fourth assignment, Paul argues that the trial court abused its discretion when it found that the rental properties located at 228 Heaton Avenue, 625 Bowen Street, and 915 Milburn Avenue were marital property. 228 Heaton Avenue was purchased on February 2, 1996, for $24,000.00 cash. 625 Bowen Street was purchased April 24, 1996, for $27,000.00 cash.[3] 915 Milburn Avenue was purchased for $7,750.00 on May 29, 1996. Because these properties were all acquired during the parties' marriage, Paul had the burden of tracing the source of the money used to purchase them to his separate pre-marital assets.

{¶ 55} Specifically, Paul argues that he purchased 228 Heaton Avenue, 625 Bowen Street, and 915 Milburn Avenue with funds from the sale of a rental property located at 26 Field Street in Bristol, Connecticut that he owned prior to the parties' marriage. The record establishes that 26 Field Street was sold on January 19, 1996, for $82,000.00. In support of his argument, Paul cites to the testimony of his expert witness, Jayde Smith, who prepared the parties' 1996 tax returns. Smith testified as follows:

> These three properties *** Heaton was purchased in February of '96, Bowen
> was purchased in April of '96, and Milburn was purchased in October of '96.
> These three properties were purchased *** with the funds from the Field
> Street, Bristol, Connecticut property which was sold in January of '96.

---

[3] The trial court found that the manner of payment for 625 Bowen Street was unclear, but because no lender's name was included on the property's closing statement, the court found it to be a cash transaction.

{¶ 56} Other than Smith's testimony, Paul failed to adduce any additional evidence, documentary or otherwise, which established that he used the funds from the sale of 26 Field Street to purchase the Heaton, Bowen, and Milburn properties. We also note that unlike many of Paul's other transactions, this land sale was not a § 1031 like-kind exchange for tax purposes. In addition to Smith's testimony, Paul's main argument is that the timeline of the transactions is compelling evidence which supports his claim that the Heaton, Bowen, and Milburn properties were purchased with the funds from the sale of 26 Field Street. Paul further testified that the funds for the purchase of the three properties came from the sale of 26 Field Street and money given to him by his father.

{¶ 57} Upon review, we agree with the trial court and find that Paul failed to adduce any competent, credible evidence that he could trace the proceeds from the sale of 26 Field Street to the purchase of the Heaton, Bowen, and Milburn properties. As the trial court correctly found, it is clear that the three properties were all purchased in 1996 after the sale of 26 Field Street in January of that year. It is not clear, however, where the funds originated that were used to purchase the three properties. Without additional documentary evidence to support his claim in this regard, we cannot say that the trial court abused its discretion when it found that Paul failed to trace the funds from the sale of 26 Field Street to the purchase of the Heaton, Bowen, and Milburn properties. There is simply no evidence in the record, with the exception of Smith's unsupported testimony, which supports Paul's argument.

{¶ 58} We also note that the trial court found that "Paul's self-serving statements are not credible evidence of tracing of funds." Generally, appellate courts defer to the trial court's decision on credibility. *Bomberger-Cronin v. Cronin*, 2d Dist. Greene No.

2014-CA-4, 2014-Ohio-2302. "The rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. City of Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1980). Clearly, the trial court was in the best position to determine the extent to credit Paul's testimony, and it ultimately did not find his "self-serving," unsupported testimony regarding the origin of the funds that were used to purchase the Heaton, Bowen, and Milburn properties to be credible.

{¶ 59} Paul's fourth assignment of error is overruled.

{¶ 60} All of Paul's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

Robert M. Mues
Charles W. Morrison
Brian A. Sommers
Hon. Denise L. Cross