[Cite as *McKenna v. McKenna*, 2019-Ohio-3807.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| LORI A. MCKENNA, | : | APPEAL NO. C-180475 |
| | | TRIAL NO. DR-1600095 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| PETER J. MCKENNA, | : | |
| Defendant-Appellant. | : | |

Appeal From:  Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 20, 2019

*Taft Stettinius & Hollister LLP* and *Aimee L. Keller*, for Defendant-Appellant,

*Croswell & Adams Co., L.P.A.,* and *Gregory L. Adams*, for Plaintiff-Appellee.

**WINKLER, Judge.**

{¶1} Defendant-appellant Peter J. McKenna ("Husband") appeals from a final decree of divorce, challenging the domestic-relations court's valuation of his business property. The domestic-relations court valued Husband's property in reliance on an expert appraisal submitted by plaintiff-appellee Lori A. McKenna ("Wife"). Because we determine that the domestic-relations court's decision to adopt Wife's appraisal over Husband's was not against the manifest weight of the evidence, and the court did not otherwise abuse its discretion in dividing the parties' marital property, we affirm.

## I.     Factual Background and Procedural Posture

{¶2} Husband, a plastic surgeon, owns two, interrelated practices located on Montgomery Road, across from Bethesda North Hospital. The property that houses his practices is owned by Plastic Surgery Enterprises Ltd. (hereinafter the "PSE property"). In November 2016, the parties jointly hired Eric Gardner, a commercial appraiser, to value the PSE property in preparation for settlement discussions. The parties were unable to reach a settlement, and the matter proceeded to trial.

{¶3} At trial, Gardner described the PSE property as a renovated, two-story home built in 1951, with an adjacent parking lot. For appraisal purposes, Gardner classified the building on the PSE property as a surgical center, as opposed to a medical-office building, because the first floor contained a surgical suite where Husband performed surgeries. Gardner testified that he used two valuation methods to value the property: the sales-comparison approach and the income-capitalization approach. With the sales-comparison approach, Gardner compared the PSE

property to sales of similar properties. Gardner then made adjustments to the value of the comparable sales to account for differences in the properties. With the income-capitalization approach, Gardner valued the PSE property as an owner-occupied asset with rental value. Gardner looked at market rent in the area for other medical offices and surgical centers and then took into account vacancy rate and rent loss, as well as operating expenses. Then, Gardner applied a direct capitalization rate, or "cap rate," of 7 percent to account for other property risks. Gardner reached the cap rate by looking at comparable cap-rate sales or sales of similar investments. After doing both valuation approaches, Gardner appraised the PSE property at $1,210,000, minus the mortgage.

{¶4} Despite jointly hiring Gardner prior to trial, Husband produced his own commercial appraiser at trial, Shaun Wilkins, to testify as to his appraisal of the PSE property. Wilkins had been hired by Husband in 2015, prior to Wife's complaint for divorce, and prior to the joint hiring of Gardner. Unlike Gardner, Wilkins classified the building as a medical-office building, and not a surgical center, based upon the building's layout and lack of utilities, such as gas lines and a ventilation system. Using the sales-comparison approach, Wilkins chose comparable sales that involved medical-office buildings in the Cincinnati-area market, as opposed to surgery centers in other markets in Ohio. With respect to the income-capitalization approach, Wilkins chose a cap rate of 8.775 percent, which took into account a higher risk for the PSE property, given the age of the building. Wilkins opined that his appraisal of the PSE property was $872,000, minus the mortgage.

{¶5} At the conclusion of trial, the magistrate found the value of the PSE property to be $863,598, in reliance on Gardner's valuation and after deducting the

mortgage. The magistrate afforded no weight to Wilkins's appraisal, given that the appraisal had been completed in 2015, a year prior to the date of the termination of the marriage, and that Husband had not given a copy of the appraisal to Gardner, even though Gardner had specifically requested any prior appraisals of the property. The magistrate also noted that Wilkins's income-capitalization approach failed to account for the actual rental rate that Husband used when managing his businesses. Husband filed objections.

{¶6} The domestic-relations court overruled Husband's objection regarding the PSE property and also found the value of the PSE property to be $863,598, in reliance on Gardner's valuation. The domestic-relations court reasoned that Gardner had been jointly hired by the parties. This appeal by Husband ensued.

{¶7} In a single assignment of error, Husband argues that the domestic-relations court erred in its valuation of the PSE property.

## II. Analysis

{¶8} As an initial matter, we seek to clarify the standard of review in this case. Husband asserts that we should review the trial court's valuation of the PSE property for an abuse of discretion. Wife counters that we should apply a manifest-weight-of-the-evidence review.

{¶9} In divorce proceedings, the domestic-relations court is required to divide marital property equitably between spouses. R.C. 3105.171(B). The manner in which a domestic-relations court executes an equitable division of property is reviewed for an abuse of discretion. *Thomas v. Thomas*, 171 Ohio App.3d 272, 2007-Ohio-2016, 870 N.E.2d 263, ¶ 5 (1st Dist.); *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998). Prior to making an equitable division,

4

however, the domestic-relations court must assign a monetary value to all marital property, which is a factual issue. *Sieber v. Sieber*, 2015-Ohio-2315, 37 N.E.3d 776, ¶ 34 (12th Dist.). In civil cases, different standards of review apply depending on whether a party challenges the sufficiency or the weight of the evidence. *See In re A.B.*, 1st Dist. Hamilton No. C-150307, 2015-Ohio-3247, ¶ 14, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 15.

{¶10} In this appeal, Husband challenges the domestic-relations court's valuation of property, where the court had before it appraisals from two, competing experts. Therefore, Husband challenges the weight of the evidence adduced to support the domestic-relations court's valuation of the property. Since *Eastley*, we review weight-of-the-evidence challenges in civil cases by applying the standard set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). *See In re A.B.* at ¶ 16, citing *Eastley*. "In reviewing a weight of the evidence challenge, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re A.B.* at ¶ 16, citing *Eastley* and *Thompkins*.

{¶11} With our standard of review in mind, we now turn to the merits of the arguments in Husband's appeal. Husband takes issue with some of the statements made by the magistrate in his proposed decision, in which the magistrate afforded no weight to Husband's appraisal of the PSE property. However, a party claiming error on the part of the trial court must base its claims on actions taken by the trial court, and not based on the magistrate's findings in his proposed decision. *State Farm*

*Mut. Auto. Ins. Co. v. Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, 911 N.E.2d 339, ¶ 11 (2d Dist.); *Hose v. Gatliff*, 176 Ohio App.3d 356, 2008-Ohio-2430, 891 N.E.2d 1263, ¶ 6 (9th Dist.).

{¶12} Husband next argues that several crucial differences exist between the appraisals of the PSE property, which make Wilkins's appraisal more accurate. First, Husband argues that Wilkins correctly valued the building as a medical-office building, and not a surgery center. Husband argues that surgery centers often have different layouts, and that his building is not certified as a surgery center for private-insurance purposes or for Medicare purposes. Second, Husband argues that Gardner considered inappropriate comparable sales in his appraisal. Husband points out that one sale that Gardner used as a comparable sale was considered a "fire sale," in which the buyer, a dentist, bought the property under duress to keep his practice afloat, after his former building had sustained fire damage. Husband also argues that Gardner inappropriately used sales from different real-estate markets, such as Middletown, Ohio, and Englewood, Ohio, and that one comparable sale included renovation costs. Finally, Husband argues that Gardner's cap rate was too low, and that a cap rate of 7 percent would be more appropriate for valuing a newer building that could be rented by a larger medical practice.

{¶13} Husband's arguments do not persuade us that the domestic-relations court's adoption of Gardner's appraisal over Wilkins's created a manifest miscarriage of justice. Even though Husband's practice is not a build-to-suit surgery center, Wilkins acknowledged that Husband performed surgery in the building. When Gardner testified regarding his sales-comparison approach, he explained that the comparable sales he used were not identical to Husband's property, and so he

6

adjusted the value of the comparable sales to account for differing factors. For instance, with the dentist's property, Gardner made a downward adjustment to the value of the property to account for the fact that the dentist had likely paid a premium. Wilkins chose a higher cap rate based upon the market trend that smaller medical practices like Husband's had been sold to larger medical organizations, particularly hospitals, and that the PSE property would be unattractive to larger medical practices. Wilkins admitted on cross-examination, however, that he did not know if the market trend applied to cosmetic-surgery practices. Furthermore, the domestic-relations court was entitled to afford more weight to Gardner's appraisal than Wilkins's, given that Gardner had been jointly hired by the parties. As an independent and disinterested appraiser, Gardner could have been found by the domestic-relations court to be more credible.

{¶14} Therefore, Husband has not shown that the domestic-relations court's valuation of the PSE property was against the manifest weight of the evidence, or that the domestic-relations court abused its discretion in dividing the marital property. As a result, we overrule Husband's assignment of error.

### III. Conclusion

{¶15} Having overruled Husband's sole assignment of error challenging the domestic-relations court's valuation of marital property, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **BERGERON, J.,** concur.

**Please note:**

The court has recorded its own entry on the date of the release of this opinion.