[Cite as *Tyra v. Tyra*, 2022-Ohio-2504.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

DANIELLE TYRA,                              :         APPEAL NO. C-210392
                                                     TRIAL NO. DR-2000052
    Plaintiff-Appellee,              :

  vs.                                      :         *O P I N I O N.*

NUGIE TYRA,                                 :

    Defendant-Appellant.             :


Appeal From:  Hamilton County Court of Common Pleas, Domestic Relations
                Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 22, 2022


*Barry Law, LLC*, and *Sara M. Barry*, for Plaintiff-Appellee,

*Cornetet, Meyer, Rush & Stapleton* and *Karen P. Meyer*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} Defendant-appellant Nugie Tyra ("husband") appeals the decree of divorce entered by the Hamilton County Court of Common Pleas, Domestic Relations Division, which terminated his marriage to plaintiff-appellee Danielle Tyra ("wife"). Husband asserts three assignments of error for our review related to the trial court's division of property. For the reasons set forth below, we affirm the judgment of the trial court.

## Procedural History

{¶2} On January 10, 2020, wife filed a complaint for divorce against husband, which asserted that the parties were married on February 16, 2017. Husband filed an answer and counterclaim for divorce on February 13, 2020. A property trial was held on February 10 and February 26, 2021. After submission of written closing arguments, the magistrate entered a decision on all issues on April 30, 2021. Husband filed objections to the magistrate's decision on April 30, 2021, and wife filed objections to the magistrate's decision on May 10, 2021. A hearing was held on the objections and on the merits on June 1, 2021. The trial court entered a decision overruling the objections and adopting the magistrate's decision without modification on June 7, 2021, and entered a final decree of divorce on June 25, 2021.

{¶3} Husband timely filed a notice of appeal on July 21, 2021. He now raises three assignments of error for our review: (1) whether the trial court abused its discretion by failing to allocate the parties' 2019 tax debt in violation of R.C. 3105.171; (2) whether the trial court abused its discretion by failing to allocate husband's premarital business bank account funds as his separate property; and (3) whether the trial court abused its discretion by failing to address husband's requested reimbursements which benefited wife.

## Factual Background

### 2019 Tax Debt

{¶4}   Wife testified that she was employed by husband starting in 2018.  She was still employed by husband for most of 2019.  Husband paid her $5,000 monthly, plus living expenses.  Her employment stopped on November 13, the day she left.  Husband sent her a 1099 form in either January or February of 2020.  She had never received a 1099 form from husband in the past.  Wife said that she attempted to contact the parties' accountant multiple times to find out how the parties were going to file their taxes for 2019 but received no response.  She ultimately filed her taxes without using the 1099 form because she had never received one before and did not have any offsetting expenses to file with it.  Wife agreed that she would be willing to file an amended tax return if the court felt that it was necessary, so long as she was able to review what husband was filing before she did.

{¶5}   Husband testified that he ultimately filed his taxes as married filing separately, which resulted in a tax liability of $45,117.  He asserted that, had he been able to file jointly, his tax liability would have only been around $4,320.  However, at one point in his testimony, he also agreed that he filed his taxes as head of household.

### Premarital Business Bank Account

{¶6}   At the time of the parties' marriage, husband held a business bank account with Park National Bank.  When discussing the status of this account before the marriage, husband testified, "I had $107,000 and I used that money to put the down payment of $38,000 on our first house that we purchased in January of 2017, which reduced my business account down to $72,000."  He denied having a personal checking account prior to the marriage.  Husband said that he ultimately switched this account to First Financial Bank in 2018 when he established a personal and business

3

account at First Financial. Husband did not dispute that the First Financial business account was set up during the marriage and was commingled with marital expenses.

{¶7} Wife testified that she did not know husband had a personal bank account. She claimed that everything was charged to husband's business account. She said, "He paid like the house expenses and things like that, so those would be paid out of the business account." She also said that trips and Cardinal's season tickets were purchased out of the business account and that husband's child-support payments were paid from the business account.

{¶8} Husband claimed that he paid his child-support payments from his personal account. He agreed that he paid for the Cardinal's season tickets out of his business account and admitted making payments on his personal credit card from his business account. He also agreed that part of the purchase price for his latest home was paid from his business account. Ultimately, when asked if it was fair to say that there was mixed personal use and business expenses, husband responded, "I mean, there might be some personal."

*Payment of Expenses*

{¶9} Wife testified that, during the marriage, husband was responsible for paying the mortgage and expenses, including the car. She said that her contribution was grocery shopping, holiday shopping, birthday shopping, and sometimes paying when they went out to eat.

{¶10} Husband submitted a list of alleged payments to the trial court that he had made on wife's behalf since the filing of this action. He asked the court to consider these payments when making an award to wife and to include these payments as part of the court's decision. He also testified and presented evidence of two additional

payments that did not appear on his initial list: a 2021 property tax payment and a monthly car payment.

**Law and Analysis**

**{¶11}** "This court reviews 'the manner in which a domestic-relations court executes an equitable division of property for an abuse of discretion.' " *Boolchand v. Boolchand*, 1st Dist. Hamilton Nos. C-200111 and C-200120, 2020-Ohio-6951, ¶ 9, citing *McKenna v. McKenna*, 1st Dist. Hamilton No. C-180475, 2019-Ohio-3807, ¶ 9. "An abuse of discretion is more than a mere error of judgment; it implies that the court's attitude [was] arbitrary, unreasonable, or unconscionable." (Citations omitted.) *Id.* "Factual issues, however, such as those arising in the classification and valuation of property, are reviewed under the distinct sufficiency-and-weight-of-the-evidence standards." *Id.*, citing *McKenna* at ¶ 9-10.

**{¶12}** "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * * [U]pon making such a determination, the court shall divide the martial and separate property equitably between the spouses, in accordance with [R.C. 3105.171]." R.C. 3105.171(B). Generally, "the division of marital property should be equal. If an equal division of marital property would be inequitable, the court shall not divide the martial property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1). "In making a division of marital property, the court shall consider all relevant factors." *Id.* In relevant part, this includes the following factors: (1) the duration of the marriage; (2) the assets and liabilities of the spouses; (3) the liquidity of the property to be distributed; (4) the economic desirability of retaining intact an asset or an interest in an asset; (5) the tax consequences of the property division upon the respective awards to be made to each

5

spouse; and (6) any other factor that the court expressly finds to be relevant and equitable. R.C. 3105.171(C)(1) and 3105.171(F). "[T]he court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse." R.C. 3105.171(D).

{¶13} "In any order for the division or disbursement of property * * *, the court shall make written findings of fact that support the determination that the martial property has been equitably divided and shall specify the dates it used in determining the meaning of 'during the marriage.' " R.C. 3105.171(G). "During the marriage" means (1) the period of time from the date of the marriage through the date of the final hearing; or (2) if the court determines that the use of either or both of those dates would be inequitable and instead selects dates that it considers equitable in determining marital property, the period of time between those dates selected and specified by the court. R.C. 3105.171(A)(2). "The court may issue any orders under [R.C. 3105.171] that it determines equitable * * *." R.C. 3105.171(J).

{¶14} In relevant part, "marital property" means: (1) all real or personal property that currently is owned by either or both of the spouses, and that was acquired during the marriage; (2) all interests that either or both of the spouses currently has in any real or personal property, that was acquired by either or both of the spouses during the marriage; and (3) all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage. R.C. 3105.171(A)(3)(a). "Marital property" does not include "separate property." R.C. 3105.171(A)(3)(b). In relevant part, "separate property" means all real or personal property, and any interest in real or

personal property, that the court finds was acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

{¶15} " 'Traceable' here 'refers to evidence demonstrating a connection between property currently owned and some antecedent article of separate property. Such proof overcomes the effect of commingling, by which separate property may be "transmuted" into marital property.' " *Fiamengo v. Fiamengo*, 2d Dist. Montgomery No. 26704, 2016-Ohio-4720, ¶ 28, quoting *Maloney v. Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, ¶ 22 (2d Dist.). "So in determining whether property is separate or marital, '[t]he key issue is traceability.' " *Id.*, citing *Janis v. Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731, ¶ 48. "The party in a divorce action claiming that specific property owned when the marriage terminates is not marital but separate property has the burden of proof by a preponderance-of-the-evidence standard." *Boolchand*, 1st Dist. Hamilton Nos. C-200111 and C-200120, 2020-Ohio-6951, at ¶ 8, citing *Dunn v. Dunn*, 1st Dist. Hamilton Nos. C-010282 and C-010292, 2002-Ohio-6247, ¶ 14. "Generally, the evidence of tracing must be specific, and oral testimony unsupported by documentary evidence should not carry much weight." *Id.* at ¶ 25, citing *Harkey v. Harkey*, 11th Dist. Lake No. 2006-L-273, 2008-Ohio-1027, ¶ 64, and *Dunn* at ¶ 21-22. " 'Because traceability presents a question of fact, we must give deference to the trial court's findings, and the court's decision on the matter will not be reversed as against the manifest weight of the evidence when it is supported by competent credible evidence." *Fiamengo* at ¶ 29, quoting *Maloney* at ¶ 23.

*2019 Tax Debt*

**{¶16}** Husband argues that it was error for the trial court to "fail to allocate" the parties' 2019 tax debt. However, the trial court acknowledged husband's testimony that he had to pay significantly higher taxes because wife filed separately rather than together, made specific findings regarding certain other liabilities of the parties, and then ordered that "[e]ach party shall be responsible for and pay any and all additional debts or liabilities in his or her separate name * * *." Thus, the trial court obviously considered the parties' tax liability in determining the equitable distribution of the parties' debts and liabilities but found it equitable to leave the liability for the 2019 taxes as it was. Therefore, contrary to husband's contentions, the trial court did not fail to issue a decision on this issue.

**{¶17}** Beyond that, husband does not assert any argument that the trial court's decision was inequitable in this regard. Additionally, the record contains three different tax returns for husband, all of which have a different tax filing status and none of which are signed, and all three tax returns show different tax liabilities. There was also inconsistent testimony from husband at trial on whether he filed as head of household or as married filing separate. Thus, the record is unclear on what husband's tax liability even was. Accordingly, we cannot determine the trial court abused its discretion in making its decision and this assignment of error is overruled.

*Funds from Premarital Business Bank Account*

**{¶18}** Husband asserts that the trial court abused its discretion by failing to allocate to him as separate property the $70,758 in his premarital business bank account at Park National Bank. The trial court found that the funds were significantly comingled with marital property and found that husband failed to provide sufficient tracing evidence to prove the money remained his separate property.

{¶19} Husband submitted a statement from his business account at Park National Bank, which covered the period between January 31, 2017, and February 28, 2017. The statement showed that husband had $70,758 in the account as of February 16, 2017, the date of the parties' marriage. The statement also showed that the balance of that account went down to $49,538.92 as of February 28, 2017. Husband additionally submitted a statement from his business account at First Financial Bank, which covered the period between December 2, 2019, and December 31, 2019. This statement showed an ending balance of $192,816.19 as of December 31, 2019, the last day of the parties' marriage. No evidence was presented to show any transfer of funds from the account at Park National Bank to the account at First Financial Bank. Thus, the only tracing evidence presented by husband was the balance of the Park National account on the first day of the marriage, and the balance of the First Financial account, where he asserted the funds were transferred, on the last day of the marriage. Husband asserts that this was sufficient tracing evidence as it showed that the account balance never fell below $70,758. However, the Park National Bank statement showed that the account balance fell to $49,538.92 as of February 28, 2017. Additionally, without any connecting evidence, the evidence failed to show that the money in the First Financial account was in fact the money from the Park National Bank account.

{¶20} The lack of sufficient tracing evidence is further demonstrated by the trial court's apparent confusion on which account husband was claiming the funds were transferred to, his personal account or his business account at First Financial. The trial court found that the funds were transferred to husband's personal checking account at First Financial Bank. This is likely because that is what husband argued in his written closing argument to the trial court. However, husband's testimony at trial was that the funds were transferred into his business account, his objections to the

9

magistrate's decision claimed the funds were transferred into his business account, and his argument here on appeal is that the funds were transferred into his business account.

{¶21} Nevertheless, any error by the trial court was harmless as husband agreed at trial that the funds in his personal checking account were marital property, and he does not present any argument here on appeal that allocating this account as marital was improper. *See* Civ.R. 61; Civ.R. 75(A); *Knor v. Parking Co. of Am.*, 73 Ohio App.3d 177, 189, 596 N.E.2d 1059 (1st Dist.1991), citing Civ.R. 61 ("An appellate court will not reverse a judgment on the basis of any error that is harmless."). The trial court ultimately allocated both First Financial Bank accounts in their entirety as marital and we cannot say this was not supported by sufficient evidence in the record or that it was against the manifest weight of the evidence. Accordingly, this assignment of error is overruled.

*Reimbursement for Payment of Expenses*

{¶22} Without listing any of the specific expenses to which he is referring, husband argues that he paid "numerous expenses" on behalf of wife during the pendency of this action and asserts that it was an abuse of discretion for the trial court to fail to allocate these expenses because it permitted wife to retain the benefit of such payments, which rendered an unequal division of property. He then makes a conclusory statement that the property division must be equitable if it is not equal. However, he does not assert any further argument or point to any legal authority to show why this resulted in an inequitable division of property.

{¶23} " ' "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." ' " *Heimann v. Heimann*, 3d Dist. Hancock No. 5-21-11, 2022-Ohio-241, ¶ 49, quoting *Rodriquez v.*

*Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, ¶ 7. Under App.R. 16(A)(7), husband had a duty to present "[a]n argument containing the contentions of appellant with respect to each assignment of error presented for review *and the reasons in support of the contentions*, with citations to the authorities, statutes, and parts of the record on which appellant relies." (Emphasis added.) Because he failed to do so, we disregard this assignment of error. *See* App.R. 12(A); App.R. 16(A)(7); *Victor v. Kaplan*, 2020-Ohio-3116, 155 N.E.3d 110, ¶ 102 (8th Dist.); *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 30.

## Conclusion

{¶24} Having overruled or disregarded each assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.

11