[Cite as *Boolchand v. Boolchand*, 2020-Ohio-6951.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

AMITA RIKHY BOOLCHAND,          :          APPEAL NO. C-200111
                                           TRIAL NO. DR-1802085
    Plaintiff-Appellee/          :
    Cross-Appellant,
                                :          *O P I N I O N.*
  vs.
                                :
PUNIT BOOLCHAND,
                                :
    Defendant-Appellant/
    Cross-Appellee.               :


Appeal From:   Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 30, 2020


*Wagner & Bloch* and *Deborah L. McPartlin*, for Plaintiff-Appellee/Cross-Appellant,

*Cors & Bassett, LLC*, and *Michael L. Gay*, for Defendant-Appellant/Cross-Appellee.

**WINKLER, Judge.**

{¶1} This appeal arises from a judgment of divorce granted to the parties, plaintiff-appellee/cross-appellant Amita Rikhy Boolchand ("Rikhy")[1] and defendant-appellant/cross-appellee Punit Boolchand ("Boolchand"). Boolchand asserts error related to the trial court's division of property, challenging the determination that his defined contribution retirement plan account was entirely marital property and that a joint investment account contained, in part, Rikhy's separate, inherited funds. Rikhy argues, in her cross-appeal, that the court erred when it failed to require Boolchand to contribute to her attorney fees. For the reasons that follow, we affirm.

## Background Facts

{¶2} Rikhy and Boolchand were married in New Delhi, India, on March 21, 1977, and had two children during the marriage, both of whom are emancipated. The parties physically separated on July 23, 2018. Rikhy began the divorce proceedings in November 2019. Ultimately, both parties sought a divorce.

{¶3} The matter was heard before a magistrate. Issues at trial included the classification, valuation, and division of substantial assets and whether Rikhy was entitled to have Boolchand contribute to her attorney fees. The magistrate set forth comprehensive and detailed findings of fact and conclusions of law resolving the issues. Pertinent to this appeal, the magistrate determined (1) Boolchand's defined contribution retirement plan account with TIAA-CREF, a retirement savings benefit offered by his employer, the University of Cincinnati, ("UC") was entirely marital property, even though Boolchand began his employment with UC before the marriage, (2) Rikhy had a separate property interest in a mutual fund account that

---

[1] The divorce decree restored plaintiff to her former name of "Amita Rikhy."

contained marital funds because she successfully traced inherited funds, and (3) each party would be responsible for their attorney fees.

{¶4} Both parties filed objections to the magistrate's decision. With respect to the issues raised on appeal, the trial court overruled the parties' objections. The court then entered a final judgment and decree of divorce.

Boolchand's Assignments of Error

{¶5} Boolchand's two assignments of error relate to the trial court's classification, valuation, and division of marital and separate property. In a divorce proceeding, the trial court "shall * * * determine what constitutes marital property and what constitutes separate property" and then "shall divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(B). Generally, this means that the court should award each spouse his or her separate property and then distribute the marital estate equally, unless an equal division would be inequitable. R.C. 3105.171(B)-(D).

{¶6} R.C. 3105.171 sets forth specific definitions of marital and separate property to assist the trial court in achieving an equitable distribution. Of importance here, "marital property" includes "real or personal property that currently is owned by either or both of the spouses, including * * * retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i)-(iv). Marital property also includes any "currently" held "interest" in the "retirement benefits of the spouses" that was "acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(ii).

{¶7} Marital property "does not include any separate property," *see* R.C. 3105.171(A)(3)(b), but it generally includes "all income and appreciation on separate

3

property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(3)(a)(iii).

{¶8} Separate property, by contrast, includes property acquired before the marriage and certain other property, such as inheritances and gifts, acquired by one spouse during the marriage. R.C. 3105.171(A)(6)(a). As long as it is traceable, separate property retains its identity, even when it is commingled with marital property. *See* R.C. 3105.171(A)(6)(b); *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994). The party in a divorce action claiming that specific property owned when the marriage terminates is not marital but separate has the burden of proof by a preponderance-of-the-evidence standard. *Dunn v. Dunn*, 1st Dist. Hamilton Nos. C-010282 and C-010292, 2002-Ohio-6247, ¶ 14, citing *Peck* at 734.

{¶9} This court reviews "the manner in which a domestic-relations court executes an equitable division of property for an abuse of discretion." *McKenna v. McKenna*, 1st Dist. Hamilton No. C-180475, 2019-Ohio-3807, ¶ 9. An abuse of discretion is more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *See, e.g.*, *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 589 (1990); *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Factual issues, however, such as those arising in the classification and valuation of property, are reviewed under the distinct sufficiency- and weight-of-the-evidence standards. *See, e.g., McKenna* at ¶ 9-10.

### Division of the Defined Contribution Account

{¶10} In his first assignment of error, Boolchand argues the trial court erred when dividing his UC defined contribution account. Boolchand began his

employment with UC and "enrolled" in the retirement savings plan approximately seven and one half years before the marriage. The value of his account and ultimately his retirement benefit depend on how much was contributed for investment and how well the investment performed; it was not calculated based on a formula that took into consideration years of service. *See* 29 U.S.C. 1002(34); *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 559 N.E.2d 1292 (1990), fn. 11.

{¶11} At the time of the divorce proceedings, Boolchand was 75 years old and still employed by UC. The defined contribution account had a value of over $5,500,000. Although the parties agreed that Rikhy would be entitled to share only in the marital portion of the account, which would be divided equally, the parties disagreed with respect to the method for determining the marital portion of the account.

{¶12} To determine the marital portion of the defined contribution account, Boolchand relied on a "coverture formula," based on a ratio of the number of years of his employment at UC during the marriage to the total number of years of his employment. Thus, he claimed 18 percent of the value of the account at the time of divorce as his separate property and only 78 percent as marital.

{¶13} Rikhy argued that the use of the coverture fraction was inappropriate to determine the marital and separate portions of the defined contribution account because the retirement benefit would be based on contributions and market forces, not a formula that would take into account years of service. Because Boolchand failed to provide any tracing evidence, such as the value of the plan at the date of marriage, the value of contributions made during the marriage, or the percentage of salary contributed by him or his employer before or during the marriage, Rikhy argued the plan was entirely marital property to be divided equally.

5

{¶14} The trial court rejected the application of the coverture fraction to divide the defined contribution plan and additionally found the asset to be entirely marital because Boolchand failed to establish, by a preponderance of the evidence, the value of any claimed separate interest. The court ultimately awarded Rikhy 50 percent of the value of the account as of December 1, 2018, plus growth or losses on her share until actual division of the asset.

{¶15} Boolchand argues the trial court's rejection of the coverture fraction is at odds with the Ohio Supreme Court's decision in *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 559 N.E.2d 1292 (1990). He contends that *Hoyt* requires a trial court in divorce proceedings to use the coverture fraction to determine the marital and separate portions of a retirement plan, if the benefit is vested but unmatured, regardless of the characteristics of the plan. We disagree.

{¶16} In *Hoyt*, decided before the enactment of R.C. 3105.171, the Supreme Court recognized the difficulty courts face when considering pension and retirement benefits in a property division stemming from a divorce. The court set forth "guidelines" to be used by the trial courts when resolving such issues, but, more importantly, also recognized that "no specific rule can apply in every case." *Id.* at 179. Specifically, the court held that "[w]hen considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based on the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." *Id.* at paragraph one of the syllabus.

{¶17} To support his argument that the trial court lacked discretion in this matter, Boolchand relies on the following passage in *Hoyt*:

In a situation involving vested but unmatured retirement benefits, the trial court may reserve jurisdiction and either determine the parties' proportionate shares at the time of the divorce or determine proportionality when the benefits become vested and matured. In determining the proportionality of the pension or retirement benefits, the non-employed spouse, in most instances, is only entitled to share in the actual marital asset. *The value of this [marital asset] would be determined by computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment.*

(Emphasis added.) *Id.* at 182.

{¶18} We are not persuaded that this passage evinces the *Hoyt* court's adoption of an inflexible, bright-line rule requiring the use of a coverture fraction to value the marital and separate portions of every vested but unmatured retirement benefit. The *Hoyt* court repeatedly and expressly rejected the use of a bright-line rule, announcing that "flat rules have no place in determining a property division." *Id.* at 180; *see Blaner v. Blaner*, 11th Dist. Trumbull No. 94-T-5163 (June 9, 1995) (rejecting premise that use of coverture fraction was mandatory); *Ware v. Ware*, 5th Dist. Licking No. 12CA91, 2014-Ohio-2606, ¶ 25; Sowald & Morganstern, and Treneff, *Domestic Relations Law, Baldwin's Ohio Practice*, Section 12:18 (2002-2021 Ed., Dec. 2020 update) ("[T]here is no hard and fast rule requiring the trial court to apply a coverture factor.").

{¶19} The specific facts in *Hoyt* involved a spouse's defined *benefit* retirement plan. The participating spouse's benefits were vested at the time of the divorce proceedings, but he was still employed and his retirement benefit would be

7

determined using a formula that took into account his years of employment. Considering this factual context, the use of the coverture fraction would be appropriate to determine the marital and separate portions of the retirement benefit.

{¶20} In this case, the value of the defined contribution retirement benefit is based on contributions left in the account and market forces, not years of employment or another formula. Therefore, the use of the coverture fraction would be an arbitrary and unnecessary method for determining the marital portion of the account. *See* Gary Shulman, *Qualified Domestic Relations Order Handbook*, Section 11.02 (3d Ed., 2014 supplement). Ultimately, the trial court's analysis was supported by a sound reasoning process. We conclude the trial court did not abuse its discretion when selecting a method for determining the marital and separate portions of the defined contribution account. See *AAAA Ents.*, 50 Ohio St.3d at 161, 553 N.E.2d 597.

{¶21} Moreover, to the extent that Boolchand is also challenging the trial court's factual determination that the account was entirely marital, he has not shown error. At a minimum, Boolchand had the burden to prove, by a preponderance of the evidence, that the defined contribution account contained premarital, separate property. *Dunn*, 1st Dist. Hamilton Nos. C-010282 and C-010292, 2002-Ohio-6247, at ¶ 14, citing *Peck*, 96 Ohio App. 3d at 734, 645 N.E.2d 1300. Boolchand did not present evidence of the value of his account at the time of marriage. As the trial court noted, Boolchand submitted no evidence as to contributions to the account before the marriage. He did submit a letter showing he "enrolled" in the plan in 1969, but this, without more, was insufficient evidence for tracing contributions. Consequently, the trial court's determination that the asset was entirely marital was

supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶22} In summary, because Boolchand claimed the retirement plan was an asset containing both marital and separate portions, he was required to demonstrate and trace his claimed separate property interest in the asset. Boolchand relied entirely on the coverture fraction to establish his separate property interest. We agree with the trial court that Boolchand's reliance on the coverture fraction to establish his separate property interest in his defined contribution plan was misplaced. Thus, we conclude the trial court did not err when it determined that the asset was entirely marital. Accordingly, we overrule Boolchand's first assignment of error.

## Inherited Funds

{¶23} Boolchand's second assignment of error challenges the trial court's finding that Rikhy traced her separate inherited funds in a mutual fund account with TIAA-CREF. Boolchand does not dispute that Rikhy received two inheritances during the marriage from her parents in India or that she deposited the repatriated inherited funds in the parties' checking account with Key Bank, in August 2013 and April 2018. But he maintains that Rikhy presented no credible evidence from which the trial court could have identified those funds as Rikhy's separate property in the TIAA-CREF mutual fund account.

{¶24} In December 2018, the challenged mutual fund account had a value of $275,862.51, and the court determined that 74.16 percent of the value was Rikhy's separate, inherited property, and the remaining 25.84 percent was marital. Because this is a factual determination, we review this assignment of error under sufficiency- and weight-of-the-evidence standards.

9

{¶25} Separate property, including an inheritance received by one spouse during the marriage, retains its separate nature as long as it is traceable, regardless of whether it has been commingled with other property. *See* R.C. 3105.171(A)(6)(b); *Dunn*, 1st Dist. Hamilton Nos. C-01028 and C-010292, 2002-Ohio-6247 at ¶ 18. Generally, the evidence of tracing must be specific, and oral testimony unsupported by documentary evidence should not carry much weight. *See Harkey v. Harkey*, 11th Dist. Lake No. 2006-L-273, 2008-Ohio-1027, ¶ 64; *Dunn* at ¶ 21-22.

{¶26} Here, the record contains evidence from which the court could have determined that the funds were traceable, even though they were extensively and repeatedly commingled. To meet her burden of tracing, Rikhy presented voluminous documentary evidence from the parties' relevant financial accounts as well as her own testimony. It was undisputed that through the marriage Rikhy had taken care of the family finances and investments. She explained the path of the inherited funds from the Key Bank account into the mutual fund account where they were invested, then into a newly opened TIAA-CREF annuity account, and back into the mutual fund account, accomplished, by necessity, by transfers in and out of the Key Bank account.

{¶27} After Rikhy deposited her first inheritance into the mutual fund account in August of 2013, the $222,227.43 account balance was 32.50 percent marital and 67.50 percent separate. The balance decreased to $208,925.25, but none of the inherited funds were withdrawn. Applying the percentages to the reduced balance, the marital portion was valued at $67,900.71 and Rikhy's separate portion decreased to $141,024.54.

{¶28} When $75,000 from Rikhy's second inheritance was transferred into the mutual fund account in April 2018, the account became 23.77 percent marital

and 76.23 percent separate. After that deposit, just $34,300 of the mutual fund account shares were redeemed. Rikhy claimed that all of those withdrawn funds were used for marital purposes, but the trial court found Rikhy had not met her burden of proof with respect to $20,000 of those funds. Thus, the trial court made the appropriate adjustments to the percentages of marital and separate property and concluded that Rikhy was entitled to receive 74.16 percent of the account's value as her nonmarital, separate property.

{¶29} Admittedly, the inherited funds were extensively commingled with marital funds. But Rikhy also explained that martial expenses were routinely paid out of the Key Bank account, and not the mutual fund account, and never from her inherited funds. She was cross-examined on the tracing issues, including on gifts made to the parties' youngest child. For instance, Boolchand took the position at trial that gifts to the parties' youngest child, including a gift of almost $100,000 before Rikhy received the August 2013 inherited funds, were unilateral and should be considered from her inherited funds, or were the result of financial misconduct. The court resolved this factual issue against Boolchand because he had signed off on the gift tax return.

{¶30} Ultimately, we conclude that the trial court's determination that Rikhy had traced her inherited funds in the TIAA-CREF mutual fund account was supported by sufficient evidence and was not against the manifest weight of the evidence. In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21. Accordingly, we overrule Boolchand's second assignment of error.

Cross-Assignment of Error

**{¶31}** In her sole cross-assignment of error, Rikhy contends the trial court erred by not ordering Boolchand to contribute to her attorney fees, which were approximately $ 25,000 at the time of trial.

**{¶32}** The court in a divorce action may award all or part of reasonable attorney's fees to a party if the court finds the award "equitable." R.C. 3105.73(A). In making this determination, the court "may consider" the marital assets and income of the parties, any award of temporary spousal support, the parties' conduct, and other relevant factors the court deems appropriate. *Id.*

**{¶33}** This court reviews the trial court's decision on attorney fees under the deferential abuse-of-discretion standard. *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 102. To be an abuse of discretion, the decision must be unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

**{¶34}** In this case, the trial court adopted the magistrate's findings on the issue of fees and ordered each party to pay their own fees. When reviewing Rikhy's request for fees, the magistrate found that that the parties had an equal ability to pay their own fees, "the issues involved were significantly complex in nature[,] and neither party took 'frivolous' positions."

**{¶35}** Rikhy maintains she did not have an equal ability to pay her fees because there was disparity in income and expenses. This conclusory claim is belied by the record. Of note, she was awarded temporary spousal support of $6,250, which amounted to 50 percent of Boolchand's income, and then spousal support of $5,355 until Boolchand's retirement. In addition, at the conclusion of this matter, she will receive assets worth approximately $3,000,000.

**{¶36}** Rikhy further maintains that Boolchand's positions in the case, including a claim of financial misconduct, were frivolous and led to unnecessary expenses. The claim of financial misconduct, however, was not frivolous and was tied to the litigation of the complex tracing of Rikhy's claimed inherited funds.

**{¶37}** Ultimately, Rikhy's arguments do not convince us that the trial court abused its broad discretion when it refused to order Boolchand to contribute to Rikhy's fees. Accordingly, we overrule Rikhy's sole assignment of error.

## Conclusion

**{¶38}** Having overruled the assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.**, and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.