[Cite as *Stratman v. Durrani*, 2023-Ohio-3035.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SIERRA STRATMAN, | : | APPEAL NOS. C-220027 |
| | | C-220032 |
| Plaintiff-Appellee/Cross-Appellant, | : | TRIAL NO. A-1305127 |
| | : | |
| vs. | : | |
| | : | *O P I N I O N.* |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| and | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| Defendants-Appellants/Cross-Appellees. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: August 30, 2023

*Robert A. Winter, Jr., James F. Maus* and *Benjamin M. Maraan, II,* for Plaintiff-Appellee/Cross-Appellant,

*Taft Stettinius & Hollister LLP, Russell S. Sayre, Aaron M. Herzig, Philip D. Williamson, Anna M. Greve* and *David C. Roper, Lindhorst & Dreidame Co., L.P.A., Michael F. Lyon, James F. Brockman* and *Paul J. Vollman* for Defendants-Appellants/Cross-Appellees.

**BERGERON, Judge.**

{¶1} This medical malpractice case brought by plaintiff-appellee/cross-appellant Sierra Stratman involves allegations of medical negligence relating to a surgery performed by Dr. Abubakar Durrani. Ms. Stratman filed suit against defendants-appellants/cross-appellees Dr. Durrani and the Center for Advanced Spine Technologies, Inc. ("CAST") (collectively, "Defendants"), along with other defendants not parties to this appeal. The case proceeded to a jury trial, which returned a verdict in favor of Ms. Stratman, concluding that Dr. Durrani was negligent in his care and treatment of her and that he made fraudulent misrepresentations to her. Our review of the trial record demonstrates that the trial court abused its discretion in various evidentiary and trial-related rulings that, when viewed collectively, we cannot consider harmless. We accordingly must reverse the judgment and remand this matter for a new trial.

I.

{¶2} Ms. Stratman began suffering back pain at 10 years of age and leg pain at 14—pain that only grew worse over time. Her pain was not caused by any apparent injury, but she nevertheless suffered from numbness, pins and needles, and extreme muscle tightness, all of which basic everyday tasks (such as sitting, standing, walking, and bending forward) seemed to aggravate.

{¶3} Ms. Stratman's primary physician, Dr. Rawlings, first ordered an MRI for her in early 2010. Thereafter, Dr. Rawlings referred her to Dr. Skidmore, a spine surgeon at Mayfield Clinic, for a neurological consultation. Dr. Skidmore diagnosed a disc bulge at her L5-S1 and recommended non-surgical treatment.

{¶4} After exhausting efforts with medication, physical therapy, and a chiropractor, none of which provided her any meaningful relief, Ms. Statman stopped seeing Dr. Skidmore and approached Dr. Durrani in May 2010 for a second opinion. Defendants and Ms. Stratman dispute how severe her condition was at this time. According to Defendants, Ms. Stratman had degenerative disc disease, and even after prescribing several medications, she was afforded no relief. And regardless, according to Dr. Durrani, he initially recommended non-surgical treatment to Ms. Stratman, including epidural injections, which she rejected.

{¶5} However, Ms. Stratman, and her experts, claim that Dr. Durrani overexaggerated her symptoms and pain by misreading her MRI and embellishing her condition in order to justify an unnecessary surgery. While Dr. Durrani began to believe that the conservative treatment efforts had run their course without success, thus triggering the need for surgery, Ms. Stratman's experts insist that she "failed to benefit enough with what conservative treatment she had," by not completing a reasonable amount of physical therapy and rejecting the epidural injections entirely.

{¶6} Regardless, in October 2010, Dr. Durrani performed a bilateral decompression, lumbar discectomy, and bone fusion into the L5-S1 level of her spine from the front. Ms. Stratman's surgery apparently went well—according to her, "[t]he three months following surgery, I felt really good. In fact, you could use the word that I used saying that I felt great, because I did. After I didn't have the pain of the surgery anymore, I thought I was good."

{¶7} In November 2010, however, Ms. Stratman was assaulted by a woman who punched her in the face several times and shoved her up against a wall. After treatment at the emergency room, the incident left Ms. Stratman with back pain. A

second incident sent her to the emergency room, in January 2011, after she fell down the steps in her apartment complex, causing tenderness in her lower back. Thereafter, Ms. Stratman alleges that the pain that existed before the surgery returned.

{¶8} In 2014, Ms. Stratman sought another surgery from another surgeon, Dr. Rohmiller. Dr. Rohmiller believed that the L5-S1 fusion had been destabilized and performed surgery to ameliorate that in April 2014. Similar to the procedure with Dr. Durrani, Ms. Stratman encountered an initial improvement in pain following the surgery, but a subsequent regression.

{¶9} Ultimately, Ms. Stratman concluded that Dr. Durrani and CAST had committed malpractice by performing a medically unnecessary surgery. She asserted claims of negligence, negligence per se, battery, lack of informed consent, intentional infliction of emotional distress, fraud, and violations of the Safe Medical Devices Act against Dr. Durrani. Against CAST, Ms. Stratman brought similar claims as well as vicarious liability (for Dr. Durrani's conduct) and negligent hiring and retention.

{¶10} After the case proceeded to a jury in November 2019, it returned verdicts in favor of Ms. Stratman on her claims for negligence and fraudulent misrepresentation. She was initially awarded $458,847.26 in economic damages, $900,000 in non-economic damages, and $1 in punitive damages. The trial court later remitted her non-economic damages to $500,000 (based on R.C. 2323.43(A)(3)), and reduced her non-economic damages by $2,049.73, based on a settlement agreement with other defendants. Ms. Stratman was also awarded $217,723.14 in prejudgment interest, $55,008 in attorney fees, and $5,257.20 in court costs. This timely appeal followed.

4

II.

**{¶11}** Defendants' first assignment of error implicates a variety of evidentiary and related issues that arose during trial, which they claim entitle them to a new trial. Defendants attack the playing of excerpts of various depositions of Dr. Durrani (which the parties call the "collage") as irrelevant, highly prejudicial, and violative of several evidentiary rules. Further, Defendants allege that the trial court erroneously allowed the jury to hear about Dr. Durrani's medical license revocations, both during trial and during the collage. Finally, Defendants challenge the trial court's allowing plaintiff's counsel to emphasize Dr. Durrani's absence, an issue that manifested in a jury instruction regarding his absence.

**{¶12}** "A court may grant a motion for a new trial for, among other things, an irregularity in the proceedings of the court, if the judgment is not sustained by the weight of the evidence, or any reason 'for good cause shown.' " *Adams v. Durrani*, 2022-Ohio-60, 183 N.E.3d 560, ¶ 20 (1st Dist.), quoting Civ.R. 59(A). Upon a trial court's denial of a motion for a new trial, "we 'construe the evidence in a light favorable to the trial court's action,' " while applying an abuse of discretion standard of review. *Id.*, quoting *Kreller Group v. WFS Fin., Inc.*, 155 Ohio App.3d 14, 2003-Ohio-5393, 798 N.E.2d 1179, ¶ 30 (1st Dist.).

**{¶13}** "An abuse of discretion connotes more than a mere error of judgment; rather, 'it implies that the court's attitude is arbitrary, unreasonable, or unconscionable.' " *Hayes v. Durrani*, 1st Dist. Hamilton No. C-190617, 2021-Ohio-725, ¶ 8, quoting *Boolchand v. Boolchand*, 1st Dist. Hamilton Nos. C-200111 and C-200120, 2020-Ohio-6951, ¶ 9. An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has

5

discretionary authority." *Johnson v. Abdullah,* 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

A.

**{¶14}** We first consider Defendants' argument regarding Dr. Durrani's medical license revocations. Counsel for Ms. Stratman emphasized the license revocations two times during the trial: during opening arguments and closing arguments. Beyond those occurrences, this point emerged frequently during the playing of the collage, a point we elaborated upon in *Stephenson v. Durrani*, 1st Dist. Hamilton Nos. C-220020 and C-220036, 2023-Ohio-2500, ¶ 44-46.

**{¶15}** We previously held that featuring Dr. Durrani's license revocations at trial constitutes an abuse of discretion. *Setters v. Durrani*, 2020-Ohio-6859, 164 N.E.3d 1159, ¶ 19-21 (1st Dist.) ("*Setters I*") ("[T]he mere fact that Durrani's medical licenses were revoked is not probative of his truthfulness. * * * [T]he admission of such evidence * * * did little more than prejudice the minds of the jurors. * * * Because the evidence could influence the case on an improper basis, we find that the trial court abused its discretion in admitting evidence of Durrani's medical licenses being revoked under Evid.R. 403."). We reemphasized this point more recently in *Stephenson* at ¶ 46.

**{¶16}** In *Setters I*, we found the limited references to the license revocations to be harmless error when measured against the complete evidentiary record at trial. *Setters I* at ¶ 24, 26. By contrast, in *Stephenson*, where the license revocations emerged more extensively, we could not dismiss the error as harmless. *Stephenson* at ¶ 40 ("[U]nlike in *Setters I*, the license revocation point in this case emerged much

more frequently[.] * * * [W]e cannot conclude that the admission of evidence of Dr. Durrani's medical license revocations is harmless on this record.").

{¶17} The record here aligns with that in *Stephenson*. In other words, the references to the license revocation were not limited as in *Setters I*, but were much more extensive. We will consider whether this error is harmless in section D below.

### B.

{¶18} In addition to the license revocations, Defendants maintain that the collage as a whole runs afoul of various evidentiary rules. This court addressed the collage extensively in *Stephenson*, 1st Dist. Hamilton Nos. C-220020 and C-220036, 2023-Ohio-2500, at ¶ 41-65, and we incorporate by reference that analysis. For similar reasons, we find here that "the overall impact of the collage requires us to find that the trial court abused its discretion in connection with the collage's admission in this case." *Id*. at ¶ 65.

### C.

{¶19} Next, Defendants argue that the trial court improperly allowed Ms. Stratman's counsel to reference Dr. Durrani's absence, culminating in a jury instruction that provided: "you are allowed to consider as part of your deliberations the fact that Dr. Durrani did not attend the trial and testify to specific facts about the case in his defense and you may make whatever inference and conclusion you choose from that fact."

{¶20} This court also addressed this point recently in *Hounchell v. Durrani*, 1st Dist. Hamilton No. C-220021, 2023-Ohio-2501, ¶ 61-70. While we found that comments limited to Dr. Durrani's absence and its impact on legal proceedings did not constitute error, *id*. at ¶ 64, citing *Pierce v. Durrani*, 2015-Ohio-2835, 35 N.E.3d 594,

7

¶ 19 (1st Dist.), the overly broad jury instruction concerning Dr. Durrani's absence did constitute an abuse of discretion. *Hounchell* at ¶ 70 ("Because this instruction was so broadly worded that it allowed the jury to draw impermissible inferences from Durrani's absence, we hold that the trial court abused its discretion in providing the instruction."). Because the jury instruction in this case is identical to the erroneous one in *Hounchell*, we hold that its inclusion by the trial court here constituted an abuse of discretion.

### D.

**{¶21}** After reviewing the alleged errors at trial, we conclude that the admission of the license revocations, aspects of the collage, and the jury instruction concerning Dr. Durrani's absence discussed above all represented errors. We must now evaluate whether those errors are harmless or warrant a new trial.

**{¶22}** " 'An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice.' " *Setters I*, 2020-Ohio-6859, 164 N.E.3d 1159, at ¶ 22, quoting *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 35. "In determining whether substantial justice has been done, a reviewing court must weigh the prejudicial effect of the errors and determine whether the trier of fact would have reached the same conclusion had the errors not occurred." *Id.*, citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165, 407 N.E.2d 490 (1980). Given that multiple errors occurred here, we must consider the cumulative effect of these errors.

**{¶23}** In *Stephenson*, we noted that the trial-based errors were "in many respects interrelated, shifting the jury's attention away from the issue of medical

malpractice and towards improper character issues concerning Dr. Durrani * * * [and] it emerged in vivid detail during closing arguments by plaintiff's counsel." *Stephenson*, 1st Dist. Hamilton Nos. C-220020 and C-220036, 2023-Ohio-2500, at ¶ 79. We similarly find that Ms. Stratman's counsel impregnated closing arguments with impermissible character evidence to tarnish Dr. Durrani, potentially tipping the scales in this close case.

{¶24} Counsel emphasized the collage during closing argument, but also helped explain its prejudicial impact: "So why is that important? Well, the best we have of Dr. Durrani is [the collage]. And you saw that it had *nothing directly related to this case*." (Emphasis added.) Even though the collage did not relate to the case, counsel wielded the prejudicial character evidence to attack Dr. Durrani. In this regard, counsel highlighted the license revocations and resume inflation: "And you can look at his credibility in terms of his truthfulness as it relates to, for instance, his medical application. The single most important thing he has in his business life is his medical license. And what did he do with it? He risked it all by lying on his medical application. And you heard the lies directly."

{¶25} This explanation by counsel was inappropriate for two reasons: (1) as this court has discussed previously, Dr. Durrani's license revocations " 'centered on his signing blank prescriptions,' " *Stephenson* at ¶ 46, quoting *Setters I* at ¶ 18, and not from him lying or fabricating details about his credentials, and (2) as we highlighted in *Stephenson*, "Dr. Durrani denied virtually all of the allegations of resume inflation except for those that he didn't recall." *Id*. at ¶ 63. In other words, counsel exploited the inadmissible testimony in the collage to paint Dr. Durrani as a liar and damage his credibility.

9

{¶26} Counsel also reminded the jury about Dr. Durrani's other malpractice suits and his alleged nonpayment of legal fees—which, again, we held in *Stephenson* to be impermissible, *see Stephenson*, 1st Dist. Hamilton Nos. C-220020 and C-220036, 2023-Ohio-2500, at ¶ 50, 56: "He talks about, well, he didn't realize that the malpractice actions that were pending against him at the time were to be included because he thought it had to be something that was completed and not pending. * * * And as the jury instruction you'll receive from the judge says, you don't have to believe someone that lies. * * * And when they lie, that lie affects their credibility overall."

{¶27} Significantly, in evaluating the gravity of these prejudicial errors, as they permeated closing arguments and the rest of the trial, we highlight that Ms. Stratman acknowledged that Dr. Durrani's care and treatment improved her pain, claiming that she felt "great" before she was attacked in the assault and fell down the stairs. While Dr. Rohmiller and Ms. Stratman's experts provided their testimony, suggesting that Dr. Durrani performed the surgery incorrectly thus necessitating the revision surgery, Defendants supplied their own, equally competent experts to combat this theory. With a pitched battle between experts, evidence of improvement of Ms. Stratman's condition following surgery, and potential intervening causes (the fall and assault), we have little difficulty concluding that this case was a close one.

{¶28} Thus, considering these errors collectively in the present case, we seriously question whether the jury would have reached the same conclusion but for the errors at trial. *See Stephenson* at ¶ 85; *Setters I*, 2020-Ohio-6859, 164 N.E.3d 1159, at ¶ 22. Defendants are accordingly entitled to a new trial in which the jury can consider the case afresh, without the prejudicial evidence that intruded into the first trial. The first assignment of error is sustained in part and we hold it to be moot in

10

part—Defendant's first assignment of error also implicates an issue related to damages awarded to Ms. Stratman which we discuss in section III below.

III.

**{¶29}** Defendants also present two damages-related issues by the trial court. As part of their first assignment of error, they question the award of future damages to Ms. Stratman, and in their second assignment of error, they challenge the award of prejudgment interest and attorney's fees. Ms. Stratman also pursues a cross-assignment of error, arguing that Defendants were not entitled to a set-off from her settlement with other defendants.

**{¶30}** Because we are reversing for a new trial on the trial-related errors, discussed above in section II, any consideration of potential errors with respect to damages is rendered moot. We therefore do not consider Defendants' second assignment of error or Ms. Stratman's cross-assignment of error.

\*     \*     \*

**{¶31}** In light of the foregoing analysis, we sustain Defendants' first assignment of error in part and hold it to be moot in part, and determine that the second assignment of error and the cross-assignment of error are moot and we therefore do not address them. We remand this case for a new trial consistent with this opinion and the law.

Judgment reversed and cause remanded.

**CROUSE, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.