[Cite as *Greene v. Durrani*, 2023-Ohio-3069.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| GLORIA GREENE, | : | APPEAL NOS. C-220023 |
| | | C-220037 |
| Plaintiff-Appellee/Cross-Appellant, | : | TRIAL NO. A-1706467 |
| | : | |
| vs. | : | |
| | : | *O P I N I O N.* |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| and | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| Defendants-Appellants/Cross-Appellees. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: September 1, 2023

*Robert A. Winter, Jr., James F. Maus* and *Benjamin M. Maraan, II,* for Plaintiff-Appellee/Cross-Appellant,

*Taft Stettinius & Hollister LLP, Russell S. Sayre, Aaron M. Herzig, Philip D. Williamson, Anna M. Greve, Lindhorst & Dreidame Co., L.P.A., Michael F. Lyon, James F. Brockman* and *Paul J. Vollman* for Defendants-Appellants/Cross-Appellees.

**BERGERON, Judge.**

{¶1} This medical malpractice case brought by plaintiff-appellee/cross-appellant Gloria Greene involves allegations of medical negligence relating to a surgery performed by Dr. Abubakar Durrani. Ms. Greene subsequently filed suit against defendants-appellants/cross-appellees Dr. Durrani and the Center for Advanced Spine Technologies, Inc., ("CAST") (collectively, "Defendants"), along with other defendants not parties to this appeal. The case proceeded to a jury trial, which returned verdicts in favor of Ms. Greene, concluding that Dr. Durrani was negligent in his care and treatment of Ms. Greene. Our review of the trial record demonstrates that the trial court abused its discretion in various evidentiary and trial-related rulings that, when viewed collectively, we cannot consider harmless. We accordingly must reverse the judgment and remand this matter for a new trial.

I.

{¶2} Ms. Greene first saw Dr. Durrani in June 2012, presenting a chief complaint of lower back pain since at least 2006 and severe pain radiating down her right leg for at least a year prior—Defendants insist that Ms. Greene's excruciating leg pain is known as radiculopathy. She also complained of numbness and tingling in these areas that had gone on for some time and were getting progressively worse: she rated her leg pain as a ten out of ten and her back pain a five out of ten. Ms. Greene experienced a decreased range of motion, encountering significant pain while trying to bend forward and while walking, standing, and sitting. She was sixty-six years old at the time, was morbidly obese, and had diabetes.

{¶3} Ms. Greene and Defendants differ in how they characterize her conditions when she first went to see Dr. Durrani. Ms. Greene alleges that while she

did have pain in her back and significant pain in her right leg, she was able to work, did not need assistance with fifteen different areas of life, was functioning at a reasonable level, and had a reasonable ability to enjoy life. Defendants highlight that she indicated that medication and physical therapy provided her with no relief, that her leg pain impacted how she walked, and basic activities, such as sitting, standing, and walking, exacerbated her pain. Further, Defendants allege that Ms. Greene had no interest in epidural steroid injections—which seemingly would have only provided temporary relief.

{¶4} To address these issues, Dr. Durrani performed an L4-L5 fusion surgery on Ms. Greene in December 2012. From the surgery, she suffered a nerve injury—according to Dr. Durrani, apparently a known complication. Further, Ms. Greene suffered a post-operative infection, which opened her incision and which required aggressive medications and efforts to eradicate. Ms. Greene was readmitted to the hospital in January 2013 and stayed until February 2013, extending her post-surgical pain.

{¶5} Most significantly, Ms. Greene alleges that Dr. Durrani stretched her femoral nerve on her right side, injuring her knee and hip joints and causing her difficulty in walking. Although she experienced some numbness, her weakness apparently requires her to seek assistance while walking, created instability in her leg, required her to be fitted for a knee brace, purchase a walker, undergo extensive physical therapy, and rotate in and out of nursing homes due to the permanent femoral nerve damage. While Ms. Greene insists that her back pain never abated, Dr. Durrani and CAST highlight that it appears that Ms. Greene did mention at an emergency room visit that her pain had improved somewhat.

3

{¶6} In April 2013, Ms. Greene commenced this litigation. She asserted claims against Dr. Durrani for negligence, battery, lack of informed consent, intentional infliction of emotional distress, fraud, and spoliation of evidence. Against CAST, she asserted claims of vicarious liability, negligent hiring, retention, and supervision, fraud, violations of the Ohio Consumer Sales Practices Act, and spoliation of evidence.

{¶7} After dismissing her action in November 2015, Ms. Greene refiled her claims in August 2016. The case proceeded to trial before a jury in January 2020. The jury returned a verdict in her favor on her claim for negligence, finding that Dr. Durrani had deviated from the standard of care. The jury further found that Ms. Greene suffered from a permanent physical functional injury.

{¶8} In turn, the jury awarded Ms. Greene $418,468.62 in economic damages and $1,350,000 in non-economic damages. The trial court later reduced her noneconomic damages to $500,000, and then granted Defendants a set-off because she settled with other defendants, producing a total compensatory award of $873,361.79. Ms. Greene was also awarded prejudgment interest in the amount of $91,879.65 and court costs of $1,212.22. This timely appeal followed.

II.

{¶9} Defendants' first assignment of error implicates a variety of evidentiary issues that arose during trial, which they claim entitle them to a new trial. Defendants attack the playing of excerpts of various depositions of Dr. Durrani (which the parties call the "collage") as irrelevant, highly prejudicial, and violative of several evidentiary rules. Further, the Defendants allege that the trial court erroneously allowed the jury to hear about Dr. Durrani's medical license revocations, both during trial and during

4

the collage. Finally, Defendants argue that the trial court improperly allowed Ms. Greene's counsel to reference Dr. Durrani's absence.

{¶10} "A court may grant a motion for a new trial for, among other things, an irregularity in the proceedings of the court, if the judgment is not sustained by the weight of the evidence, or any reason 'for good cause shown.' " *Adams v. Durrani*, 2022-Ohio-60, 183 N.E.3d 560, ¶ 20 (1st Dist.), quoting Civ.R. 59(A). Upon a trial court's denial of a motion for a new trial, "we 'construe the evidence in a light favorable to the trial court's action,' " while applying an abuse of discretion standard of review. *Id.*, quoting *Kreller Group, Inc. v. WFS Fin., Inc.*, 155 Ohio App.3d 14, 2003-Ohio-5393, 798 N.E.2d 1179, ¶ 30 (1st Dist.).

{¶11} "An abuse of discretion connotes more than a mere error of judgment; rather, 'it implies that the court's attitude is arbitrary, unreasonable, or unconscionable.' " *Hayes v. Durrani*, 1st Dist. Hamilton No. C-190617, 2021-Ohio-725, ¶ 8, quoting *Boolchand v. Boolchand*, 1st Dist. Hamilton Nos. C-200111 and C-200120, 2020-Ohio-6951, ¶ 9. An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

A.

{¶12} We first consider Defendants' argument regarding Dr. Durrani's medical license revocations. Counsel for Ms. Greene emphasized the license revocations three times during the trial: once during opening statements, and twice while cross-examining Dr. Marx, a radiologist testifying for Defendants. Beyond those occurrences, this point emerged frequently during the playing of the collage. *See*

5

*Stephenson v. Durrani*, 1st Dist. Hamilton Nos. C-220020 and C-220036, 2023-Ohio-2500, ¶ 44.

**{¶13}** We have previously held that featuring Dr. Durrani's license revocations at trial constitutes an abuse of discretion. *Setters v. Durrani*, 2020-Ohio-6859, 164 N.E.3d 1159, ¶ 19-21 (1st Dist.) ("*Setters I*") ("[T]he mere fact that Durrani's medical licenses were revoked is not probative of his truthfulness. * * * [T]he admission of such evidence * * * did little more than prejudice the minds of the jurors. * * * Because the evidence could influence the case on an improper basis, we find that the trial court abused its discretion in admitting evidence of Durrani's medical licenses being revoked under Evid.R. 403."). We reemphasized this point more recently in *Stephenson* at ¶ 46.

**{¶14}** In *Setters I*, we found the limited references to the license revocations to be harmless error when measured against the complete evidentiary record at trial. *Setters I* at ¶ 24, 26. By contrast, in *Stephenson*, where the license revocations emerged more extensively, we could not dismiss the error as harmless. *Stephenson* at ¶ 40 ("[U]nlike in *Setters I*, the license revocation point in this case emerged much more frequently * * *. [W]e cannot conclude that the admission of evidence of Dr. Durrani's medical license revocations is harmless on this record.").

**{¶15}** The record here aligns with that at issue in *Stephenson*. In other words, the references to the license revocations were not limited as in *Setters I*, but much more extensive. We will consider whether this error is harmless is section D below.

B.

**{¶16}** In addition to the license revocations, Defendants maintain that the collage as a whole runs afoul of various evidentiary rules. This court addressed the

collage extensively in *Stephenson*, 1st Dist. Hamilton Nos. C-220020 and C-220036, 2023-Ohio-2500, at ¶ 41-65, and we incorporate by reference that analysis. For similar reasons, we find here that "the overall impact of the collage requires us to find that the trial court abused its discretion in connection with the collage's admission in this case." *Id.* at ¶ 65.

C.

**{¶17}** Next, Defendants argue that the trial court improperly allowed Ms. Greene's counsel to reference Dr. Durrani's absence, culminating in a jury instruction that provided: "you are allowed to consider as part of your deliberations the fact that Dr. Durrani did not attend the trial and testify to specific facts about the case in his defense and you may make whatever inference and conclusion you choose from that fact."

**{¶18}** This court also addressed this point recently in *Hounchell v. Durrani*, 1st Dist. Hamilton No. C-220021, 2023-Ohio-2501, ¶ 61-70. While we found that comments limited to Dr. Durrani's absence and its impact on legal proceedings did not constitute error, *id.* at ¶ 64, citing *Pierce v. Durrani*, 2015-Ohio-2835, 35 N.E.3d 594, ¶ 19 (1st Dist.), the overly broad jury instruction concerning Dr. Durrani's absence did constitute an abuse of discretion. *Hounchell* at ¶ 70 ("Because this instruction was so broadly worded that it allowed the jury to draw impermissible inferences from Durrani's absence, we hold that the trial court abused its discretion in providing the instruction."). Because the jury instruction in this case is identical to the erroneous one in *Hounchell*, we also find that its inclusion by the trial court here constituted an abuse of discretion.

7

D.

**{¶19}** After reviewing the alleged errors at trial, we conclude that the license revocation points, aspects of the collage, and the jury instruction concerning Dr. Durrani's absence discussed above all represented errors. We must now evaluate whether those errors are harmless or warrant a new trial.

**{¶20}** " 'An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice.' " *Setters I*, 2020-Ohio-6859, 164 N.E.3d 1159, at ¶ 22, quoting *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 35. "In determining whether substantial justice has been done, a reviewing court must weigh the prejudicial effect of the errors and determine whether the trier of fact would have reached the same conclusion had the errors not occurred." *Id.*, citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165, 407 N.E.2d 490 (1980). Given that multiple errors occurred here, we must consider the cumulative effect of these errors.

**{¶21}** Similar to *Stephenson*, 1st Dist. Hamilton Nos. C-220020 and C-220036, 2023-Ohio-2500, at ¶ 82, we see another closely contested case concerning Dr. Durrani's care and treatment of Ms. Greene. Ms. Greene, who was morbidly obese and had diabetes, came to Dr. Durrani suffering from pre-existing leg and back pain. The experts on both sides vigorously disputed the recommended course of care given her symptoms.

**{¶22}** Dr. Mario Ammirati, the main defense expert, reviewed the relevant medical records and concluded that: (1) surgery was medically necessary given her conditions; (2) Dr. Durrani was correct in his decision to perform the surgery; and (3)

that he performed the surgery successfully. Dr. Ammirati went further, describing the relief that Dr. Durrani provided to Ms. Greene's spinal compression as, "one of the best decompressions I have ever seen."

{¶23} Plaintiff's experts, however, had difficulty agreeing on the optimal course of treatment. Dr. Bloomfield indicated that instead of surgery, all Ms. Greene needed to do was lose weight to solve her back and leg pain. Dr. Saini, by contrast, insisted that losing weight would have done nothing to help her. Regardless, they concluded that surgery should not have been performed on Ms. Greene, and Dr. Bloomfield further opined that Dr. Durrani botched the surgery.

{¶24} Both sides agreed that a complication arose during the surgery that would generate substantial pain for Ms. Greene. To the defense team, this is exactly what informed consent is all about—and they believe that she was adequately apprised of the risk. Plaintiff's experts counter that Dr. Durrani exaggerated or misrepresented the need for surgery, which precludes any effective informed consent, and that the risk occasioned by such complications dwarfed any potential benefit of the (in their eyes, unnecessary) surgery.

{¶25} With that backdrop, one other piece of evidence that might have helped illuminate the expert debate was the medical records of Ms. Greene's post-surgical care. But neither the experts nor the jury had access to any of her medical records after 2014, creating nearly a six-year gap in medical data.

{¶26} Perhaps because of the intensity of the expert duel, the lack of medical records, or some combination thereof, the jury arrived at a split verdict. It rendered defense verdicts on the claims of battery, failure to acquire informed consent, and fraudulent misrepresentation. Six jurors agreed that Dr. Durrani did not commit

battery by performing the surgery and that he appropriately acquired informed consent. They also rejected the notion that Dr. Durrani "fraudulently misrepresented the necessity of Plaintiff's surgery." In other words, these jurors rejected several theories core to Ms. Greene's presentation of the case and to her experts' opinions. A different coalition of six jurors, however, determined that Ms. Greene prevailed on her negligence claim against Dr. Durrani because he "deviated from the standard of care." This aspect of the verdict represented a rejection of certain opinions made by Dr. Ammirati. The shifting juror coalitions reflect a compromised verdict and divergent interpretations of the evidence.

{¶27} Based on the evidentiary record at hand, the jury interrogatories, and the jury's verdict, we find that all of these factors "renders the evidentiary record a much closer call on Dr. Durrani's liability than in some other cases that we have seen." *See Stephenson*, 1st Dist. Hamilton Nos. C-220020 and C-220036, 2023-Ohio-2500, at ¶ 84, citing *Setters I*, 2020-Ohio-6859, 164 N.E.3d 1159, at ¶ 25-26. This was a quintessential close case that easily could have gone either way.

{¶28} Thus, we cannot dismiss the evidentiary issues as harmless—they were highly prejudicial, and we carry doubts as to whether the jury would have reached the same conclusion but for these errors. Defendants are accordingly entitled to a new trial in which the jury can consider the case anew, without the prejudicial evidence that intruded into the first trial. The first assignment of error is sustained in part— Defendants' first assignment of error also implicates various issues with the awarding of damages to Ms. Greene which we discuss in section IV below.

### III.

**{¶29}** In their second assignment of error, Defendants argue that the trial court erred in denying their motion in limine as to Dr. Saini's testimony. This court has drawn the boundaries for what is permissible for Dr. Saini to testify to in *Adams*, 2022-Ohio-60, 183 N.E.3d 560, at ¶ 55, and *Stephenson* at ¶ 73. We find that Dr. Saini's testimony is very similar to what was offered in *Stephenson*—we therefore find no abuse of discretion by the trial court in allowing his testimony in this case. Defendants' second assignment of error is overruled.

### IV.

**{¶30}** Defendants also present a myriad of alleged damages-related errors by the trial court. As part of their first assignment of error, Defendants also call into question the jury's finding that Ms. Greene sustained a catastrophic injury, the award of future damages, and her entitlement to past medical damages. In their third assignment of error, Defendants also argue that she should not have been granted prejudgment interest. Lastly, Defendants' fourth assignment of error relates to how the trial court awarded a set-off in damages due to the settlement of some claims with other defendants—Ms. Greene in turn pursues a cross-assignment of error, arguing that Defendants should not have received any set-off.

**{¶31}** Because we are reversing for a new trial on the trial-related errors, discussed above in section II, any consideration of potential errors with respect to damages is rendered moot. We therefore do not consider Defendants' third and fourth assignments of error and Ms. Greene's first cross-assignment of error.

\* \* \*

**{¶32}** In light of the foregoing analysis, we sustain Defendants' first assignment of error in part and decline to address it in part, overrule the second assignment of error, and determine that the third and fourth assignments of error and the cross-assignment of error are moot, and we therefore do not address them. We remand this case for a new trial consistent with this opinion and the law.

Judgment reversed and cause remanded.

**CROUSE, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.